UNITED STATES DISTRICT COURT
EASTER DISTRICT OF TENNESSEE
AT CHATTANOOGA

| FRANCISCO RAUL CHAVEZ | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 1:08-cv-262/1:05-cr-90 |
| | ) | *Edgar/Carter* |
| UNITED STATES OF AMERICA | ) | |

**MEMORANDUM**

Francisco R. Chavez ("Chavez"), has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 61). [1] Chavez contends he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

The motion, together with the files and record in this case, conclusively show Chavez is entitled to no relief under 28 U.S.C. § 2255. For the reasons which follow, the Court has determined an evidentiary hearing is not necessary and concludes that Chavez's § 2255 motion lacks merit and will be **DENIED** (Criminal Court File No. 61).

**I.    Standard of Review**

A sentence in a criminal case must be vacated if the Court makes a finding "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United

---

[1] Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

1

States District Courts, the Court is to determine after a review of the answer and the record whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. The Court finds it is not necessary to hold an evidentiary hearing.

A motion filed pursuant to 28 U.S.C. § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *United States v. Johnson*, 940 F.Supp. 167, 170 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Clemmons v. Sowders*, 34 F.3d 352 (6th Cir. 1994).

### III. Procedural Background

On July 12, 2005, a grand jury in the Eastern District of Tennessee returned a three-count indictment charging Chavez with drug offenses (Criminal Court File No. 2). In that indictment, Chavez was charged, along with Jose Rafael Pelayo-Cisneros, and others known and unknown to the grand jury, with conspiracy to manufacture 1,000 or more marijuana plants in June 2005, and continuing until July 2005, in violation of Title 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A) (Criminal Court File No. 2). Count Two charged that on July 1, 2005, Chavez and Pelayo-Cisneros aided and abetted by each other, attempted to manufacture 1,000 or more marijuana plants in violation of 21 U.S.C. §§ 846, 841 (a)(1) and (b)(1)(A), and 18 U.S.C. § 2 (Criminal Court File No. 2). Count Three charged that on July 1, 2005, Chavez and Pelayo-Cisneros, aided and abetted by each other, possessed equipment, chemicals, products and materials which may be used to manufacture marijuana, knowing and having reasonable cause to believe that the equipment, chemicals, products,

and materials would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2.

Chavez was arrested on July 1, 2005, in Polk County, Tennessee, and taken into federal custody on July 14, 2005, at which time he appeared before United States Magistrate Judge William B. Mitchell Carter and was ordered detained without bond. On September 19, 2005, Chavez pleaded guilty to Count One of the Indictment, pursuant to the terms of a written plea agreement. On February 6, 2006, Chavez was sentenced to 120 months in the custody of the Bureau of Prisons and placed on supervised release for a term of five years. The fine was waived but Chavez was assessed a special assessment fee of $100 (Criminal Court File No. 32).

Chavez pursued a direct appeal, and, on August 8, 2007, the Sixth Circuit Court of Appeals affirmed his conviction and sentence. *United States v. Chavez*, 239 Fed. Appx. 173 (6th Cir. 2007) (Criminal Court File No. 59). Chavez timely filed the instant § 2255 motion (Criminal Court File No. 61).

**IV.     Factual Background**

The following recitation of facts is taken from the Offense Conduct portion of Chavez's Presentence Investigation Report ("PSR"):

> 8.     On June 28, 2005, the United States Forest Service (USFS) Investigator Russ Arthur and USFS Agent Eddie Graves located a large cultivated area containing over 1,000 marijuana plants. This cultivated area was within the Cherokee National Forest in Polk County, Tennessee. The agents discovered several tools scattered around the site, fertilizer and various plant enhancers. They located a tent and living quarters within sight of the cultivated site. The living quarters consisted of a cache of food, stoves, propane and various tools used for the aid of cultivating marijuana. No sleeping gear was found inside the tent, leaving the agents to believe nobody was in this area on the date of their discovery. The agents took a sample of marijuana and observed in excess of 1,000 well-tended marijuana plants. They returned on June 30, 2005, heard voices (in Spanish) and left.

3

9. On July 1, 2005, USFS Agents surrounded the marijuana cultivation area in the National Forest and conducted a visual surveillance. Arthur and others observed an individual, defendant Francisco Raul Chavez, work in a portion of the marijuana garden for approximately five minutes as he moved limbs from around the marijuana, drain water from the base of the plants, and break some low vegetation from around some of the marijuana plants. As the agents announced their position, Chavez fled and warned his associate, co-defendant Pelayo-Cisneros. Both defendants ran downhill from the garden area. A USFS surveillance team, that was positioned for this purpose, immediately arrested both defendants.

10. Chavez and Pelayo-Cisneros were identified and advised of their constitutional rights. Francisco Chavez admitted his involvement and stated he and his co-defendant, Pelayo-Cisneros, were working the marijuana grow site for the defendant's cousin, Alejandro Chavez from Morrow, Georgia. The defendant stated that Alejandro Chavez had contacted him and solicited his help. The defendant also admitted that his co-defendant, Pelayo-Cisneros, was involved with him in the manufacture of marijuana, stating that he and Pelayo-Cisneros had been transported to the grow site by his cousin and they were to work the marijuana grow for the cousin. The defendant stated that he and Pelayo-Cisneros would be paid by the cousin, Alejandro Chavez.

11. <u>Drug Amounts</u>: The defendant conspired with others to manufacture at least 1,000 marijuana plants. According to USSG § 2D1.1(c), Note E to the drug quantity table, "in the case of an offense involving marijuana plants, treat each plant, regardless of sex, as equivalent to 100 G of marijuana." Therefore, the defendant is attributed with 100 kilograms of marijuana (1,000 plants x 100 grams=100,000 grams or 100 kilograms of marijuana ).

(PSR, p. 4).

## V. Analysis–Ineffective Assistance of Counsel Claims

The Court discerns that Chavez asserts his trial counsel rendered ineffective assistance in four different instances, each of which the Court will analyze separately after discussing the law applicable to ineffective assistance of counsel claims.

### A. Applicable Law

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense, i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir. 1996); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir. 1992).

In order to demonstrate deficient performance, it must be shown that counsel's representation fell "below an objective standard of reasonableness" in light of the "prevailing professional norms." *Strickland*, 466 U.S. at 686-88. In *Bobby v. Van Hook*, the Supreme Court reiterated that an objective standard of reasonableness is a general standard:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Restatements of professional standards, we have recognized, can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place.

*Bobby v. Van Hook*, ___ U.S. ___, 130 S.Ct.13, 16 (2009) (quoting *Stickland v. Washington*, 466 U.S. at 688-89) (citations omitted).

To establish the prejudice prong, a petitioner must show that absent his attorney's errors, the result of his trial would have been different. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below

5

professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996) (internal punctuation and citations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d at 84.

The Supreme Court has reiterated the standard of prejudice in *Wiggins v. Smith*, 539 U.S. 510 (2003):

> [T]o establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id*. at 534 (quoting *Strickland v. Washington*, 466 U.S. at 694).

When applying these standards, the Court is cognizant of the fact that there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. "Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997) (citing *Strickland*, 466 U.S. at 687; *United States v. Cronic*, 466 U.S. 648, 658, (1984), *cert. denied*, 523 U.S. 1088 (1998); *McQueen [v. Scroggy]*, 99 F.3d [1302,] 1310-11 [6th Cir. 1996]). A reviewing court cannot indulge in hindsight but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 690; *McQueen*, 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen*, 99 F.3d at 1311; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen*, 99 F.3d at 1311; *O'Hara*,

24 F.3d at 828. "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998) (quoting *Strickland*, 466 U.S. at 690). A court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *McQueen*, 99 F.3d at 1311; *O'Hara*, 24 F.3d at 828; *Ward v. United States*, 995 F.2d 1317, 1321-22 (6th Cir. 1993); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

### B. *Ineffective Assistance of Counsel Claims*

The Court discerns that Chavez has raised four instances of ineffective assistance of counsel: (1) counsel failed to conduct any pre-trial investigation or obtain discovery; (2) counsel coerced Chavez into entering a guilty plea; (3) counsel failed to object to the prosecutor's breach of the failure to request a downward departure for Chavez's cooperation and to enforce the prosecutor's investigation's verbal promise; and (4) counsel failed to request a 4 point reduction for his minimal role in the offense.

#### 1. *Failure to Investigate*

Chavez claims trial counsel failed to perform any pre-trial investigation or obtain discovery (Criminal Court File No. 61). According to Chavez, he told counsel there were less than, or approximately 1,000 marijuana plants involved and he wanted counsel to obtain a lab report for confirmation.

According to the undisputed affidavit submitted by the prosecutor, Chavez was charged with more than one thousand marijuana plants based on evidence indicating he was involved in the

7

growing/manufacturing of approximately seven thousand (7,000) marijuana plants (Criminal Court File No. 63-1, ¶ 3). The government argues that Chavez's claim that he requested counsel to obtain a report that he expected to indicate fewer than 1000 marijuana plants were tested, thus proving he could not be convicted as charged, is a "red herring, in that any forensic testing of marijuana plants would necessarily involve only a small sample of the total number of plants. Thus, a lab report would likely reference a lesser number of plants than the quantity for which petitioner was actually responsible." (Criminal Court File No. 63, p. 7).

Chavez's argument that counsel failed to obtain the lab report as Chavez requested is suspect, as this claim is based on evidence of which Chavez was aware prior to entering his guilty plea. Indeed, while under oath, Chavez informed the Court he was satisfied with counsel's representation during:

> THE COURT: Okay. Mr. Chavez, have you had an opportunity to discuss fully all of the facts of the case with your attorney?
>
> THE DEFENDANT: Yeah. We have.
>
> THE COURT: Are you satisfied with his representation of you so far?
>
> THE DEFENDANT: Yes, sir.

(Sealed Rearraignment Transcript ("R.T."), pp. 3-4). During the hearing, the prosecutor, orally identified the terms of the plea agreement. Specifically, *inter alia*, the prosecutor announced that Chavez agreed to plead guilty to Count 1 on the indictment charging him with conspiracy to manufacture 1000 or more marijuana plants. And Chavez agreed that the prosecutor accurately summarized the agreement (R.T., pp. 6-8). In addition, the Clerk read Count One of the indictment charging Chavez with conspiring to manufacture 1000 or more marijuana plants to which Chavez pleaded guilty (R.T., pp. 10-11). Finally, the prosecutor announced the factual basis for the plea

agreement which included the allegation that law enforcement observed over 1000 plants to which Chavez agreed was true, and he acknowledged he was pleading guilty because he was guilty (R.T., pp. 17-18). In addition, the plea agreement which Chavez signed specifies the following:

> The parties agree that the following facts support the defendant's plea of guilty: on June 28, 2005, United States Forest Service (USFS) Investigator Russ Arthur and USFS Agent Eddie Graves located a large cultivated area containing ***approximately 7,000 marijuana plants***. . . .The agents took a sample of marijuana and observed in excess of 1,000 well-tended marijuana plants. . . .
>
> . . .
>
> As part of the plea agreement the parties agree that the defendant, Francisco Chavez, conspired with others, . . . to manufacture one thousand or more marijuana plants in the Eastern District of Tennessee.

(Criminal Court File No. 24, Sealed Plea Agreement) (emphasis added).[2]

Chavez's allegation regarding the amount of marijuana, is patently incredible, as it is unsupported by the record and directly contradicts his sworn, in-court statements to the Court. As the record reveals, on numerous occasions Chavez admitted that he was involved in a conspiracy

---

[2] Chavez claims his attorney presented him with a plea agreement that he had already signed and that counsel marked through the word approximately and penciled in the words "more than" above the word approximately, and instructed Chavez to initial it. Chavez attached, as Exhibit 1, the first and fifth page of the plea agreement to support this allegation (Criminal Court File No. 61). First the Court notes that the change does not appear to be made in pencil, as alleged. Second, the Court notes that the number of marijuana plants has been changed, as the plea agreement the Court has states officials discovered approximately 7,000 marijuana plants and the number in Chavez's copy is rewritten as 1,000. The copy Chavez submitted reflects someone changed the number of plants as well as changing approximately to more than. It appears that Chavez is alleging he signed a plea agreement agreeing that he was involved with more than 1,000 marijuana plants rather than more than 7000. Although these new allegations have no effect on his sentence, they are wholly incredible and the Court cautions Chavez that he submitted and signed his memorandum in support of his § 2255 motion ***under penalty of perjury*** which means if he is untruthful he can be criminally prosecuted for perjury.

to manufacture over 1,000 marijuana plants. Chavez had the opportunity not to plead guilty or to complain to the Court that counsel had failed to obtain the lab report, but declined to do so.

It is patently obvious why counsel did not pursue a challenge to the number of marijuana plants involved in this conspiracy–there is no evidence that Chavez was involved in less than 1,000 marijuana plants. Counsel's failure to pursue a meritless defense, does not constitute ineffective assistance of counsel. Further, the issue of examining the lab report was mooted by Chavez's subsequent plea agreeing that the substance involved was more than 1,000 marijuana plants.

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.), *cert. denied*, 508 U.S. 943 (1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir.), *cert. denied*, 426 U.S. 953 (1976)). This Court scrupulously followed the Rule 11 procedure and Chavez is bound by his sworn statements he made in response to the Court's inquiry under Rule 11. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992), cert. denied, 507 U.S. 932 (1993).

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

To the extent Chavez asserts he only conspired to manufacture approximately 1,000 marijuana plants or less is speculative and unsupported by the record in this case. Chavez provides no facts that support his speculative allegation. The evidence in the record reveals that, if introduced at trial, the evidence would have shown that more than 1,000 marijuana plants were on the property.

Thus, even assuming, for the sake of discussion, that counsel's alleged failure to obtain the lab report amounts to deficient performance, Chavez is not entitled to any relief because he has failed to demonstrate he suffered any prejudice as a result of the alleged short-comings of counsel. Accordingly, because Chavez was not prejudiced by his attorney's alleged failure to obtain the lab report, relief will be **DENIED** on this claim.

        2.      *Coerced Guilty Plea*

Chavez contends counsel improperly coerced and mis-advised him to plead guilty to an incorrect drug quantity and deceptively promised him that if he admitted he conspired to manufacture 1,000 or more marijuana plants, and cooperate with the government, he would receive a four to six year sentence of imprisonment.

        a.      **Incorrect Drug Amount**

As explain *supra*, Chavez's speculative and unsupported allegation that there were 1,000 or less marijuana plants is belied by the record and insufficient to state a constitutional violation. The burden is on Chavez to prove his claim by a preponderance of the evidence. *Goldsby v. United States*, 152 Fed.Appx. 431, 435 (6th Cir. Oct. 12, 2005) (unpublished table decision), available in 2005 WL 2572362. Chavez has failed to submit any credible proof that he was involved in less than 1,000 marijuana plants. Chavez does not provided any factual support for this claim as he does not explain how many plants he was manufacturing and how he knows it was less than 1,000.

Notably, Chavez agreed to the factual basis for his plea which reflects approximately 7,000 plants were growing. Nevertheless, because Chavez has not demonstrated the drug quantity is incorrect, he necessarily fails to meet his burden of proof to support his allegation that counsel mis-advised or coerced him to plead guilty to an incorrect drug quantity. Consequently, Chavez's bare

11

allegation that he manufactured less than 1,000 marijuana plants is insufficient to warrant an evidentiary hearing. Accordingly, relief is **DENIED** on Chavez's claim that counsel coerced him to plead guilty to an incorrect drug amount.

### b. Erroneous Sentencing Information

Similarly, Chavez has failed to sustain his burden of proof regarding his claim that counsel coerced him to plead guilty by telling him he would receive a four to six year sentence of imprisonment. Even assuming counsel performed deficiently and provided erroneous information to Chavez, he suffered no prejudice because, in addition to the government notifying Chavez of the mandatory-minimum sentence of 10 years up to life during his plea colloquy, paragraph seven of his plea agreement, which he signed, notified him that the penalty for the crime to which he was pleading carried a minimum sentence of imprisonment of at least ten years up to life.

In order to demonstrate ineffective assistance of counsel in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, Chavez is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). Chavez has not presented any evidence demonstrating he would not have pleaded guilty and would have gone to trial had counsel not advised he could possibly receive a sentence of four to six years. Indeed, as the Court understands Chavez's § 2255 motion and supporting brief he is not requesting a trial, but rather requests that this sentence be reduced.

In any event, Chavez was correctly informed of his sentencing exposure during his

rearraignment. The Court had the United States Attorney advise Chavez of the possible penalties that could be imposed as the result of his plea:

> MR. PIPER: A mandatory-minimum sentence of 10 years up to life, a fine of up to four million dollars and a term of supervised release of at least five years up to life and $100 special assessment.

(R.T., p. 13). Chavez acknowledged that he heard the possible sanctions and that he still wished to enter a guilty plea. Therefore, Chavez's plea was knowing and voluntary and his ineffective assistance of counsel claim regarding the alleged sentencing advice is without merit. Accordingly, Chavez is **DENIED** relief on his claim that counsel ineffectively advised him to enter a guilty plea.

### 3. *Breach of Plea Agreement*

Chavez's claim is confusingly plead but the Court discerns he claims counsel was ineffective for failing to object to the prosecutor's failure to file a § 5K1.1 motion and for failing to request the Court to compel the prosecutor "to honor his investigator's promise to the defendant that he would, for certain, receive a downward departure for his productive cooperation with the government's further investigation in this case." (Criminal Court File No. 61).

#### a. **Counsel's Failure to Object**

Contrary to Chavez's claim, counsel did object to the government's decision not to file a substantial assistance motion pursuant to United States Sentencing Guidelines (U.S.S.G.) 5K1.1, as reflected in the sentencing transcript and the sealed sidebar discussion that occurred during Chavez's sentencing hearing. Counsel argued that because Chavez provided some information, the government was required to file a substantial assistance motion. In addition, on direct appeal, counsel argued his plea was not knowing and voluntary because the government led him to believe they would file a § 5K1.1 motion. Accordingly, Chavez will be **DENIED** relief on his claim counsel

13

failed to object to the government's decision not to file a § 5K1.1 motion.

To the extent Chavez argues his plea was not voluntary because he was led to believe the government would file a § 5K1.1 motion and alleges the government failed to fulfill it's promise to file a motion for substantial assistance pursuant to § 5K1.1 departure, he previously raised a similar claim on direct appeal. On direct appeal he argued his plea was not knowing and voluntary because the government led him to believe it would make a substantial assistance motion but it failed to do so. As the Sixth Circuit found, "he was made well aware of the possibility that the Government would not make a substantial assistance motion." *United States v. Chavez*, 239 Fed.Appx. 173, 174 (6th Cir. 2007). The plea agreement provided for the possibility of a departure but specified the government retained the sole discretion to determine whether Chavez provided substantial assistance sufficient to justify filing a motion pursuant to § 5K1.1. During the plea colloquy, this Court specifically explained to Chavez "it's important for you to understand, also, that it's going to be up to the government to decide if you have provided that assistance. They may decided that you have not done so. If they do that, they won't ask me to give you a lower sentence." (R.T. p. 8). Chavez acknowledged that he understood. Chavez also acknowledged that he understood that he was bound by the plea agreement regardless of the government's decision to move for a downward departure (R.T. pp. 8-9).

The government's decision not to pursue a § 5K1.1 motion cannot be reviewed absent proof the government was motivated by unconstitutional considerations when it refused to file the substantial assistance motion. *United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000). Moreover, the Sixth Circuits resolution on this issue is the law of the case. "Under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate

decision in the same case." *Thomas v. United States*, 572 F.3d 1300, 1303 (11th Cir. 2009) (internal punctuation and citation omitted). "The doctrine operates to preclude courts from revisiting issues that were decided explicitly or by necessary implication in a prior appeal. The doctrine is based on the premise that an appellate decision is binding in all subsequent proceedings in the same case unless the presentation of new evidence or an intervening change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice." *Id*. Thus, the Sixth Circuit's conclusion that the government retained sole discretion to determine whether Chavez's assistance amounted to substantial assistance and that there was no proof the government was motivated by unconstitutional considerations when it refused to file a § 5K1.1 motion, is the law of the case and necessarily demonstrates counsel did object to the government's failure to file a § 5K1.1 motion.

Consequently, because counsel did voice an objection to the government's failure to file a substantial assistance motion, counsel was not ineffective. Chavez's claim that counsel was ineffective for failing to oppose the government's failure to file a § 5K1.1 motion, offers him no relief. Accordingly, relief will be **DENIED** on this claim.

### b. Verbal Agreement

Chavez claims counsel should have argued for the enforcement of the alleged verbal agreement by the prosecutor's investigator that Chavez would received a downward departure. The alleged verbal agreement was raised during Chavez's rearraignment and Chavez was informed that the plea agreement was based only on the written plea agreement. Thus, it would have been of no benefit to Chavez for counsel to make such an argument. Chavez's own sworn testimony reflects he entered a knowing and voluntary plea with the understanding that his plea was based solely on

the written plea agreement and would not include any "verbal agreement" by the government's agent to provide things not explicitly contained in the plea agreement:

> THE COURT: Other than what you have been promised in writing in here by the government, has anybody promised you anything about your case?
>
> THE DEFENDANT: Other than what's in the written plea agreement?
>
> MR CORDOVA: May I have a moment, Your Honor?
> (Brief pause)
> Your Honor, my client is making reference to some preliminary representations not made by the United States Attorney's Office but by an agent employed by the United States of America. We understand that those representations while made in good faith are not binding upon the government, and my client simply wanted to make certain that he was upholding his oath to tell the truth.
>
> THE COURT: Okay. Well, I can tell you and Mr. Piper can tell you, I think, correct me if I'm wrong, Mr. Piper, there are no promises other than what's in the written plea agreement here?
>
> THE DEFENDANT: Okay.
>
> THE COURT: You have to understand that. I don't know what anybody else told you, but your situation here is governed by what's in the written plea agreement.
>
> THE DEFENDANT: All right.
>
> THE COURT: And so do you understand that?
>
> THE DEFENDANT: I do.
>
> THE COURT: So you're not going to come up here later on and say somebody else told me this or that or the other thing?
>
> THE DEFENDANT: No. There is no other promises in there.

(R.T., pp. 9-10). The Court finds that Chavez's sworn, in-court statements are conclusively true. To the extent Chavez claims counsel was ineffective for failing to argue the agent's promises should

16

have been enforced, the claim is meritless as the Court clearly informed him his plea agreement was based on solely on the promises by the prosecutor contained in the written plea agreement. Accordingly, Chavez's claim that counsel was ineffective for failing to argue the agent's promises should have been enforced will be **DENIED**.

*4. Lack of Compensation or Benefit for Acceptance of Responsibility*

In his final claim, Chavez complains that, due to counsel's alleged deficient performance, he did not receive any benefit from accepting responsibility or for his minimal role. Chavez's base offense level was reduced from 26 to 23 after he received a three level reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. Thus, with his criminal history category of V, his guideline range was 84 to 105 months. Because the statutory minimum term of imprisonment was 10 years, however, his effective guideline range was 120 months. Had he not received the three-level reduction for acceptance of responsibility, his base offense level would have been 26 and with a criminal history category of V, his guideline range would have been 110-137 months which would have permitted the Court to sentence him above the 120 month statutory minimum sentence. Thus, contrary to his claim, Chavez did receive a benefit from his guilty plea and acceptance of responsibility, as the Court could not sentence him above the 120 month statutory minimum.

Chavez complains that counsel did not argue for a downward departure based on his minimal role in the conspiracy. Because Chavez was subjected to the 120 month mandatory minimum sentence, he was not able to benefit from a minimal role reduction. Accordingly, counsel was not deficient for failing to make a futile argument for a downward departure that would have had no effect on his mandatory minimum sentence. Accordingly, relief will be **DENIED**.

## VI. Conclusion

Chavez has failed to present any facts which establish his conviction or sentence is subject to collateral attack under 28 U.S.C. § 2255. Chavez is not entitled to any relief under § 2255 and a judgment will enter **DENYING** his motion.

                                    */s/ R. Allan Edgar*
                                   R. ALLAN EDGAR
                      UNITED STATES DISTRICT JUDGE